**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SABAL TRAIL TRANSMISSION, LLC,

        Plaintiff,

v.

+/- 12.894 ACRES OF LAND IN
OSCEOLA COUNTY, FLORIDA;
MYRON M. MILLER AS SUCCESSOR
TRUSTEE OF THE OSCEOLA
DEVELOPMENT TRUST APRIL 19, 2004;
IBERIABANK; and UNKNOWN OWNERS,
IF ANY,

        Defendants.

Case No. 6:16-cv-471-Orl-31-KRS

Tract Nos: HCL-FL-OS-057.500.AR,
HCL-FL-OS-058.000

**ORDER**

This cause is before the Court on the following matters:

(1) Motion for Partial Summary Judgment Determining the Right to Condemn Easements and Incorporated Memorandum of Law (Doc. 2), filed March 18, 2016;

(2) Plaintiff's Motion for Preliminary Injunction for Immediate Possession and Incorporated Memorandum of Law (Doc. 3), filed March 18, 2016; and

(3) Stipulation for Immediate Possession (Doc. 35), filed May 20, 2016.

**BACKGROUND**

On **February 2, 2016**, the Federal Energy Regulatory Commission ("**FERC**") issued an order which, among other things, granted to Plaintiff Sabal Trail Transmission, LLC ("**Plaintiff**") a Certificate of Public Convenience and Necessity ("**FERC Certificate**"), authorizing Plaintiff to construct and operate facilities for transporting natural gas in interstate commerce—the Sabal Trail Project ("**Project**"). (*See* Doc. 1; Doc. 1-5.)

Pursuant to the Natural Gas Act, 15 U.S.C. §§ 717–717z ("**Gas Act**"), and based on the FERC Certificate, Plaintiff filed several land condemnation actions throughout the U.S. District Courts for the Middle District of Florida ("**M.D. Courts**") to acquire the easements necessary to complete the Project. (Doc. 1.) With its Complaint in this action, Plaintiff also filed:

1. A description of the largest parcel of land at issue in this action (Doc. 1-2 ("**Parcel**"));

2. A proposed "Grant of Easement" with easement drawings (Doc. 1-3 ("**Subject Easements**"));

3. A copy of the FERC Certificate (Doc. 1-5);

4. A copy of the Notice of Condemnation in accordance with the requirements of Federal Rules of Civil Procedure 71.1(c)(4) and 71.1(d)(2) (Doc. 1-6 ("**Condemnation Notice**"));

5. Motion for Partial Summary Judgment Determining the Right to Condemn Easements and Incorporated Memorandum of Law (Doc. 2 ("**Rule 56 Motion**")); and

6. Motion for Preliminary Injunction for Immediate Possession and Incorporated Memorandum of Law (Doc. 3 ("**Rule 65 Motion**")).

In support of the Rule 56 and Rule 65 Motions, Plaintiff also filed sworn Declarations from the Right-of-Way Project Manager (Doc. 3), the Construction Project Manager (Doc. 6), and the Project Director (Doc. 5). On **May 20, 2016**, Plaintiff filed the Declaration of its counsel (Doc. 39), which set out appraised values for the Parcels at issue in this action and in other actions pending in the M.D. Courts.

The Defendants remaining in this action include property located in Osceola County, Florida, Iberiabank, and Myron M. Miller, as Successor Trustee of the Osceola Development Trust April 19, 2004 ("**Miller**"). (*See id.*; *see also* Docs. 24–26.) The Court directed Defendants to Answer the Complaint and respond to the Rule 56 and Rule 65

Motions "[o]n or before May 17, 2016." (Doc. 8, p. 3.) In addition, the Court set a hearing in this action for 2:00 p.m. on May 23, 2016 ("**Hearing**"). (*See id.*) Iberiabank and Miller filed Answers (Docs. 30 & 32), and Miller also attended the Hearing and filed a Stipulation for Immediate Possession, which confirms Plaintiff's rights to condemn and immediate possession ("**Stipulation**"). (Doc. 35.) Iberiabank did not attend the Hearing, nor did it file responses in opposition to the Rule 56 Motion or the Rule 65 Motion. Upon review of the record and the pertinent controlling law, the Court agrees with the other judges in the M.D. Courts that Plaintiff's Rule 56 and Rule 65 Motions are due to be granted.[1]

## THE GAS ACT

In enacting the Gas Act, Congress determined that "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest" that necessitates "Federal regulation in matters relating to the transportation of natural gas in interstate and foreign commerce." *See* 15 U.S.C. § 717(a); *see also Sabal Trail Ocala*, 2016 WL 2997669, at *1 (noting that the Act imposes federal regulation upon the interstate transportation and sale of natural gas for resale to the public for domestic, commercial, industrial or any other use"). Pursuant to the Gas Act, qualified applicants may apply for issuance of a certificate of public convenience and necessity ("**Certificate**"). *See* 15 U.S.C. § 717f(d). After notice and hearing in accordance with regulatory procedures, Certificates shall issue:

> to any qualified applicant therefore, authorizing the whole or any part of the operation, sale, service, construction, extension, or acquisition covered by

---

[1] *See Sabal Trail Transmission, LLC v. +/- 0.9 Acres of Land in Citrus Cnty., Fla.*, Case No. 5:16-cv-196-Oc-30-PRL, 2016 WL 2997669, at *1 (M.D. Fla. May, 25, 2016) (hereinafter "***Sabal Trail Ocala***"); *Sabal Trail Transmission, LLC, v. +/- 9.669 Acres of Land in Polk Cnty., Fla.*, Case No. 8:16-cv-640-T-33-EAP, 2016 WL 2745082, at *1 (M.D. Fla. May 11, 2016) (hereinafter "***Sabal Trail Tampa***").

> the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity.

15 U.S.C. 717f(e).

The Gas Act further provides a right of eminent domain for construction of gas pipelines as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located.

15 U.S.C. 717f(h). Thus, the Gas Act authorizes a party to exercise the federal power of eminent domain to acquire property necessary for an interstate natural gas pipeline project when three requirements are satisfied: (1) first, the plaintiff holds a Certificate authorizing a project; (2) second, FERC has determined that the property is necessary for the project; and (3) third, the plaintiff is unable to acquire the property by contract. *See Columbia Gas Trans., LLC, v. 1.01 Acres, More or Less, in Pa. Twp., York Cty., Pa.*, 768 F.3d 300, 304 (3d Cir. 2014), *cert. denied*, *Brown v. Columbia Gas Trans., LLC*, 135 S. Ct. 2051 (2015).

Once a Certificate is issued, Gas Act condemnation actions filed in federal district courts do "not provide challengers with an additional forum to attack the substance and validity of a FERC order." *See Williams Natural Gas Co. v. Okla. City*, 890 F.2d 255, 264

(10th Cir. 1989) (noting that district courts do not perform an appellate function under the Gas Act). Rather, at the outset of such an action, the authority of the district court is limited to the tasks of evaluating the scope of the Certificate and ordering "the condemnation of property in accordance with that scope." *Steckman Ridge GP, LLC, v. An Exclusive Nat'l Gas Storage Easement Beneath 11.078 Acres, More or Less, in Monroe Twp.*, No. 08-168, 2008 WL 4346405, at *3 (W.D. Pa. Sept. 19, 2008). Then, the "only open issue" for the district court to determine is the amount a landowner will be compensated. *See Columbia Gas Trans., LLC*, 768 F.3d at 304.

## RULE 56 MOTION

A party moving for summary judgment pursuant to Rule 56 must identify "the part of each claim . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). The Court should grant such a motion to the extent the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* Here, Plaintiff requests entry of partial summary judgment determining that it has an immediate right to condemn the Subject Easements. (*See* Doc. 2.) Miller has stipulated to entry of partial summary judgment, and Iberia has not opposed the Rule 56 Motion. *See* Fed. R. Civ. P. 56(c)(2); Local Rule 3.01(b).

The record evidence establishes that, on **February 2, 2016**, FERC issued an Order granting Plaintiff the FERC Certificate. (*See* Doc. 1-5; *see also* Doc. 4, ¶ 10.) As part of the certification process, Plaintiff submitted and FERC approved "alignment sheets" showing the final alignment of the Project ("**FERC Sheets**"). (*See* Doc. 4, ¶ 12; Doc. 5, ¶ 17; Doc. 6, ¶ 17.) In conformance with the FERC Sheets, Plaintiff then prepared and filed the Subject Easements. (*See* Doc. 4, ¶ 13.) In order to construct and operate

5

the Project in accordance with the FERC Certificate, Plaintiff must acquire the Subject Easements—but it has been unable to do so. (*See* Doc. 4, ¶¶ 2, 11, 14–16; Doc. 6, ¶¶ 7, 10–12, 25.)

Based on these facts, the Court finds that Plaintiff has met each condition necessary to condemn the Subject Easements in accordance with the Gas Act—in particular: (a) Plaintiff holds the FERC Certificate authorizing the Project; (b) FERC has determined that the Subject Easements are necessary for the Project; and (c) Plaintiff has been unable to acquire the Subject Easements by contract. Because Plaintiff is authorized by the Gas Act to exercise the power of eminent domain and has the right to condemn the Subject Easements identified in the Condemnation Notices, the unopposed Rule 56 Motion is due to be granted. *See supra*, n.1.

## RULE 65 MOTION

In its Rule 65 Motion, Plaintiff also requests that the Court issue a preliminary injunction granting it immediate possession of the Subject Easements so that Plaintiffs can commence pre-construction and construction activities. (*See* Doc. 3.) To comply with Rule 65(c), Plaintiff proposes posting a bond equal to two times the appraised value of the Parcel. (*See* Doc. 33.) Miller has agreed to entry of a preliminary injunction (Doc. 35), and Iberiabank has not filed a response in opposition to the Rule 65 Motion.

**I.   Legal Standards**

A preliminary injunction may not issue absent: (a) "notice to the adverse party" (*see* Fed. R. Civ. P. 65(a)(1)); and (b) "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained" (*id.* at 65(c)). Further, the movant must establish that:

6

(1) it has a substantial likelihood of succeeding on the merits of its claim; (2) it will suffer irreparable injury unless the injunction is issued; (3) "the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest." *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 774 (11th Cir. 2015).

## II.     Discussion

### A.     Success on the Merits Requirement

"'[O]nce a district court determines that a gas company has the substantive right to condemn property under [the Gas Act], the court may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction.'" *Fla. SE Connection, LLC v. +/- 3.370 Acres of Land in Polk Cnty, Fla.*, No. 8:16-cv-676-T-36TBM, 2016 WL 2745264, at *2 (M.D. Fla. May 11, 2016) (quoting *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004)).[2] Because the Court has determined that summary judgment is due to be entered in favor of Plaintiff concerning its right to condemn the Subject Easements, Plaintiff has established a substantial likelihood of success on the merits of its claims. *See supra* at 5–6; *see also supra* n.1.

### B.     Irreparable Injury Requirement

Given the pending in-service date and the magnitude and complex nature of the Project—which consists of five pipeline construction spreads and three compressor

---

[2] *See also Alliance Pipeline, LP, v. 4.360 Acres*, 746 F.3d 362, 368-69 (8th Cir.), *cert. denied*, *4.360 Acres of Land, More or Less, In The S/2 Section 29, Township 163 N., Range 85, W., Renville Cnty, N.D.*, 135 S. Ct. 245 (2014); *Columbia Gas Trans., LLC*, 768 F.3d at 315–16; *Columbia Gas Trans., LLC, v. 252.071 Acres*, No. ELH-15-3462, 2016 WL 1248670, at *10–*18 (D. Md. Mar. 23, 2016) (applying *Sage* and granting gas company a preliminary injunction for immediate possession of property).

station construction spreads (a "spread" is a separate construction segment) across three states—the Court also finds that Plaintiff will suffer irreparable injury if the Court denies the Rule 65 Motion. In particular, the Court notes that the Project involves the construction and operation of approximately 516.2 miles of natural gas pipeline and related facilities, which consists of: (1) approximately 481.6 miles of mainline pipeline in Alabama, Georgia, and Florida; (2) 13.1 miles of lateral pipeline (the Hunters Creek Line) in Florida; (3) another 21.5 miles of lateral pipeline (the Citrus County Line) in Florida; (4) five new natural gas-fired compressor stations; and (5) appurtenant facilities. (*See* Doc. 5, ¶ 13.) In addition, Plaintiff will construct and operate a facility in Osceola County, Florida, referred to as the Central Florida Hub. (*Id.*)

In Florida, the construction schedule for the Project is predicated upon coordinated construction of the new pipeline facilities starting in particular places within the several spreads and proceeding in a sequential manner. (*Id.* ¶ 14). The process is comparable to an assembly line, with specialized teams following each other down the right of way, successively performing tasks such as clearing, grading, ditching, pipe-stringing, welding, coating, pipe-laying, backfilling, testing, and land restoration. (*Id.*) Construction is carefully planned so that crews and equipment proceed sequentially along the right of way at a distance per day dependent on topography, road and stream crossings, and other factors. (*Id.*) To meet the in service date of May 1, 2017, construction on each spread must begin no later than **Tuesday, June 21, 2016**; thus, Plaintiff must take immediate possession in order to perform certain pre-construction activities. (*Id.*)

Once construction begins on previously-acquired parcels, nearly insurmountable challenges will arise if a construction crew reaches a parcel of land that Plaintiff does not

yet possess. In such circumstances, Plaintiff would have only two options, both of which entail significant delays and costs. The first option would require that Plaintiff stop work on the Project altogether until the necessary easements can be acquired ("**Delay Option**"). The Delay Option is untenable because any cessation of construction would delay completion of the Project indefinitely and cause Plaintiff to miss the in-service date. (*Id.*) It also would result in significant financial consequences, as Plaintiff would be liable to its contractors for delay costs resulting from work stoppage estimated to range between $20,333.00 and $123,333.00 per day. (*Id.* ¶ 23).

The section option would require Plaintiff to attempt to "move around" the unresolved parcel, begin construction on the next parcel, and return at such time as the necessary easement can be obtained ("**Move Around Option**"). (*Id.* ¶¶ 23–24.) The Move Around Option also is untenable because it would disrupt the efficient, linear workflow and delay completion of the Project for at least as long as it takes to acquire the necessary interests, thereby substantially increasing costs and the risk of missing the in-service date. (*See id.* ¶ 24.) Further, depending on various factors specific to each skipped area—such as the size of the property and the nearest FERC-approved access locations for other accessible properties—the costs resulting from each use of the Move Around Option will likely range between $18,000.00 to $130,000.00. (*Id.*) The cost would rise to approximately $720,000.00, if all of the construction crews are required to move around a particular parcel. (*Id.*)

In short, each disruption of the Project's orderly, linear workflow would force Plaintiff to incur such added construction costs that could not be recouped and constitute irreparable injury. *See supra* n.1; *N. Border Pipeline Co. v. 64.111 Acres*,

125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (holding irreparable harm would result from construction delays because increased construction costs could not be recovered from defendants); *see also Columbia Gas Trans., LLC, v. 0.85 Acres, More or Less, in Hartford Cnty, Md.*, No. WDQ-14-2288, 2014 WL 4471541, at *6 (D. Md. Sept. 8, 2014) (holding undue delay and costs in construction constituted irreparable harm); *Perryville Gas Storage, LLC, v. 40 Acres of Land Located in Franklin Parish, La.*, No. 3:11-cv-1635, 2011 WL 4943318, at *3 (W.D. La. Oct. 17, 2011) (stating increased costs if immediate possession was not granted would contravene public policy and "would be unrecoverable"); *Tenn. Gas Pipeline Co. v. 0.018 Acres of Land in the Township of Vernon, Sussex Cnty., N.J.*, No. 10-4465 (JLL), 2010 WL 3883260, at *3 (D.N.J. Sept. 28, 2010) (concluding gas company would suffer irreparable harm because "working around one small property is likely to [be] very difficult and result in large additional construction costs...[which] would not be able to be recovered").

### C. Balance of Injuries Requirement

The Court also finds that the irreparable injury at stake for Plaintiff outweighs any reparable damage that may be caused to Defendants if the proposed injunction is granted. Notably, any damages to the non-movants must and will be remedied under the Gas Act with money, and that right to compensation will not be harmed by Plaintiff's immediate possession of the Subject Easements. As explained in *Sage*, in Gas Act condemnation actions, the damage to the non-movants is simply loss of possession that "would still be disturbed, albeit at a later time, if just compensation was determined first." *See Sage*, 361 F.3d at 829; *see also Columbia Gas Trans. Corp. v. An Easement to Construct, Operate, & Maintain a 24-inch Gas Trans. Pipeline Across Props. In Greene*

*Cnty., Va.*, No. 3:07-cv-28, 2007 WL 2220530, at *4 (W.D. Va. Jul. 31, 2007) ("[T]he only 'harm' to Defendants is that of compensation—an issue that will not change depending on whether [the court] grant[s] or den[ies] the injunction.").

Upon the grant of injunctive relief in this action, there will remain the proceeding to determine just compensation. *See supra* n.3. Further, the Court will condition entry of the preliminary injunction on Plaintiff posting a security bond in the amount of **$1,159,600.00** ("**Bond**") which is two times the amount of Plaintiff's most recent appraisal of the compensation owed for Parcels HCL-FL-OS-057.500.AR, HCL-FL-OS-058.000. (Doc. 36.) The Bond will "blunt" or negate any potential claim of irreparable harm to the non-movants. *See Sage*, 361 F.3d at 829.

### D.   The Public Interest Requirement

"Congress passed the Gas Act and gave gas companies condemnation power to insure that consumers would have access to an adequate supply of natural gas at reasonable prices." *See Sage*, 361 F.3d at 830. Congress did so because supplying natural gas for the generation of electricity and other energy needs advances the public interest. *See id.* (finding pipeline project served public interest because it would make gas available to consumers and electric power plants, as well as help local communities to attract new business); *see also E. Tenn. Nat. Gas, LLC, v. 1.28 Acres in Smyth Cnty., Va.*, No. 1:06-cv-00022, 2006 WL 1133874, at *14 (W.D. Va. Apr. 26, 2006) ("[T]here is a substantial public interest at stake in this case—the need to capture and supply as much natural gas to the market as soon as possible."). Further, before issuing a certificate of public convenience and necessity under the Gas Act, FERC must determine that the project at issue furthers the goals of the Gas Act and, thus, serves the public interest. *See*

*Sage*, 361 F.3d at 830 ("FERC conducted a careful analysis of the [pipeline project] and determined that the project will promote these congressional goals and serve the public interest.").

Here, the purpose of the Project is to provide additional supplies of natural gas to Florida Power & Light Company ("**FP&LC**") and Duke Energy Florida, LLC ("**Duke**"), for their power generation needs and to the southeast region of the United States as a whole, by making additional supplies and new energy infrastructure available to support other regional power generators and the growing demand for natural gas. Upon completion, the Project will be able to transport up to 1.1 billion cubic feet of natural gas per day. (*See* Doc. 1-5, p. 3, ¶ 4.) The Project will not only provide increased natural gas supplies to existing delivery points, but will also involve the construction of the Central Florida Hub, which will serve as a new natural gas trading point with the potential for increased market competition that will result in economic benefit to end users. *See Sabal Trail Ocala*, 2016 WL 2997669, at *6.

If Plaintiff does not complete construction by the in-service date, then it will be unable to timely transport price-competitive natural gas from Alabama to Florida to help meet the growing demand for natural gas by the electric generation, distribution, and end use markets in Florida and the Southeast United States. (Doc. 5, ¶ 25.) Further, any delay in granting Plaintiff possession of the Subject Easements will impede its ability to provide the needed energy delivery services already and conclusively deemed by FERC to be in the best interest of the public. *See id.*

A delay of the Project's in-service date would cause injury to Plaintiff's customers, particularly FP&LC and Duke, as well as their customers—the numerous citizens and

businesses that purchase electric power. Such negative impacts on a gas company's customers and the public consumers they serve support entry of a preliminary injunction and counsels in favor of granting immediate possession to Plaintiff. *See Sage*, 361 F.3d at 829. Additionally, the Project is expected to have a positive economic impact on Florida's economy. Plaintiff anticipates that the Project will provide thousands of temporary construction jobs, 360 permanent operational jobs, and 977 indirect employment positions. *See Sabal Trail Ocala*, 2016 WL 2997669, at *6. Postponement of these benefits contravenes the public interest. *See Sage*, 361 F.3d at 829 (noting construction delays would cause harm by hindering "economic development efforts").

Based on determinations that the Project is necessary, its "benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities," and "the public convenience and necessity requires approval of" the Project, the FERC Certificate authorizes the construction and operation of the Project on the terms and conditions specified in the Order. (Doc. 1-5, p. 29, ¶ 88). FERC also determined that the "[P]roject's benefits to the market will outweigh any adverse effects on other pipelines and their captive customers, and on landowners and surrounding communities . . . [and] the public convenience and necessity requires approval of [the Project]." (*Id.*) Such findings are conclusive and binding on this Court and cannot be collaterally attacked. *See E. Tenn. Nat. Gas*, 2006 WL 1133874, at *13 (noting the defendants could not ask the district court to "engage in an appellate review of the propriety of [the FERC-approved] project"). Thus, based on the Gas Act, the FERC Certificate, and the record evidence, the Court finds that the public interest will be served if Plaintiff is granted immediate possession of the Subject Easements in order to

construct the Project in a timely manner.

## CONCLUSION

Accordingly, it is hereby **ORDERED, ADJUDGED, and DECREED**:

1. Plaintiff's Motion for Partial Summary Judgment (Doc. 2) is **GRANTED** in that the Court finds that Plaintiff has the right to condemn the Subject Easements.

2. Plaintiff's Motion for Preliminary Injunction and Immediate Possession (Doc. 3) is **GRANTED**.

3. Upon Plaintiff posting a proper security bond with the Clerk of this Court in the amount of **$1,159,600.00**, the following shall occur:

    a. Plaintiff shall have immediate access to, and possession of, the Subject Easements described in the Notice of Condemnation (Doc. 1-6) and incorporated herein; and

    b. Plaintiff may immediately begin pre-installation activities so that construction-related activities can commence by **June 21, 2016**, for the purposes of constructing the Project.

4. All pre-installation and construction-related activities shall be consistent with the FERC Certificate and all other applicable regulatory permits.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 3, 2016.



ROY B. DALTON JR.
United States District Judge

15

Copies:

Counsel of Record

Unrepresented Parties

Senior U.S. District Court Judge Gregory A. Presnell

Magistrate Judge Karla R. Spaulding